May it please the court, Eliezer Ben-Shmuel, Special Assistant United States Attorney on behalf of Warden Linda Thomas. I would like to reserve two minutes for rebuttal. Certainly. Keep your eye on the clock. I'll try to help you as well. Thank you. This is an appeal from a declaratory judgment issued in a habeas petition. Counsel, could you help me on something? Sure, Your Honor. I'm interested in the mootness argument, and I noticed that Yagman went back to prison for five days, I think, after the decision in the second proceeding. And I'm wondering whether that five days affects mootness, whether it means it's not moot. It does not, Your Honor. Why? For two reasons. To begin with, Mr. Yagman was serving a term of imprisonment this entire time. It was just the issue of where he was serving that term of imprisonment. Big issue. Halfway house. Big issue. I mean, the reason he was not in the halfway house and was back in prison, I think it's called close confinement in the briefs, was the discipline proceeding that was then vacated. And the vacating of that discipline proceeding is what, in your argument, makes the case moot. So what I want to know is, since the whole case is about whether he's in the halfway house or in prison as a practical matter, whether that five days meant that when the district court decided the case, it was not moot. It does not, Your Honor. Okay, explain. Sure. To begin with, he was serving a term of imprisonment up through November 8th of 2010. The time that he spent in that halfway house was still counted as a term of imprisonment, as this court decided in Rodriguez v. Smith. But the conditions of confinement were altogether different because of the discipline proceeding that was, I think the government conceded that it be set aside. In any event, it had been set aside. Well, there were two disciplinary hearings that were held here. Wasn't that time, the five days, the result of the second proceeding from which he did not appeal? That is correct. In other words, the second proceeding, I assume, because he didn't appeal it at all, cured whatever the due process violations or problems were with the first hearing. That is the contention of the court. So sort of wiped, as far as I gather your argument is, you wiped the slate clean. Another disciplinary proceeding, that was the outcome of that. It had nothing to do with the first one, even though he wound up in the detention center in a worse, you know, more restricted and Is that basically the answer? You are correct, Judge Carr. Judge Carr's question focused precisely on what my interest is. What I'm interested in is the only reason he was in prison for that five days was not because the second hearing said you should go back to prison for five days. It was because the first hearing had put him there, and it was that long before he was sent back to the halfway house or whatever. Not exactly. He was never sent back to a halfway house. He wasn't. He was never sent back to a halfway house. He stayed. From the time of the original charge up until the expiration of his term of incarceration on November 8th of 2010, he was being held, well, for the most part, at the Metropolitan Detention Center in Los Angeles. Some of that time was spent, I believe, at another jail lockup, but most of that time was spent at the NBC in Los Angeles. Okay. Was he in jail for that five days because of the first proceeding that put him there or the second proceeding? Extending it or what? It was not, Your Honor. The second hearing, again, it's not really a part of the record. However, he was found guilty of having or to have committed a lesser included offense of violating a rule, and he was ordered to spend time in closer confinement rather than going back to the halfway house or anything else. Again, though, he was at this entire time, he was serving his original term of incarceration, didn't lose any good conduct time, and so he was released on November 8th of 2010, and as the government has contended- Look, there's no question it's part of his term. We're just talking about conditions of confinement, kind of analogous to a challenge about whether somebody's in the shoe or whether they're in the general population. Agreed, Your Honor. We would also note that generally speaking, those types of challenges are not cognizable in a habeas petition. What we're talking about is a determination of where an inmate is going to be spending their term of incarceration. An inmate does not have a due process right or statutory right to be held in any particular term of confinement or place of confinement. That's a determination- I believe that's correct. I'm just asking about mootness. Understood, Your Honor. In other words, that's why, again, as this Court held in Burnett v. Lambert, the type of relief available within a habeas petition is the type of- shapes the mootness issue here. We're not talking about going back and looking at whether or not some other procedure should have been held or anything like that. The question is, at the time that this judgment was issued, did the Court have jurisdiction in order to affect the fact or duration of Mr. Yagman's confinement? And the answer is that this judgment, which I need to note, was issued two years- almost two years after his term of imprisonment had terminated, did not affect either the fact or duration of his term of imprisonment. And it couldn't. I mean, habeas corpus is the challenge on lawful detention or restraint. And there's no remedy, no cure. I mean, how could this order have had any effect at all? That's precisely what the government is- the warden has been contending with respect to this judgment, that the declaratory- the supplemental report and recommendation, the ultimate judgment that resulted from it. There is no setting aside of the original disciplinary hearing. There's no order of, you know, taking away good- you know, or restoring good conduct time or any other effect on Mr. Yagman's term of incarceration. Instead, there's just a naked declaration about- a declaratory- habeas being called a declaratory judgment. I mean, it seems to me to be an amalgam of two different kinds of proceedings that, to me anyway, doesn't work. I mean, is that a- have you heard that term used before? I have not because, again, generally speaking, the habeas judgment needs to have some sort of effect on a purportedly unlawful detention or incarceration. And there needs to be some level of an effect that would affect whether or not somebody is- has been convicted or whether- you know, how long they're going to be spending in- And how does one challenge conditions of confinement as opposed to the fact of confinement in a federal institution? A civil rights action. And that's basically- isn't that what we're talking about? That is precisely what we're talking about. If Mr. Yagman wished to challenge the conditions of confinement, then that was his option. In other words, he's in a halfway- he's not in a halfway house, but he's in a detention center. Correct. There's no question in my mind that there's no impact once vacated on his term of imprisonment. I think the lower court was really relying on the possibility of an exercise of discretion with regard to his supervised release term. And how do you respond to that? What we would respond to that is that there needs to be some underlying dispute. There needs to be some sort of- but which didn't exist in this situation. The actual hearing that was the subject of the habeas petition was vacated. And as- once it was vacated, there was nothing more for the court to do in a habeas proceeding. If there was a challenge that was going to be made to that, it needed to come in a different sort of proceeding, not a habeas petition. That would seem to me quite candidly, and I realize these are more points to make or questions to ask of the petitioner here. I mean, it seems to me that let's assume he had had a supervised release violation. And let's assume somehow there was reason to believe that whatever the outcome of that was, was affected or infected by the vacated hearing. It seems to me then he has a remedy of appeal from that supervised release. And let's assume also the judge did something about it, rather than did nothing. I mean, a lot had to happen before that issue, you know, became a lie that was in fact. I apologize, Your Honor. I believe that you're correct. And I would also note that the Supreme Court in Spencer v. Chemnitz expressly held that that type of collateral consequence doesn't count as a collateral consequence. Again, however, you have to have consequences of what? And here there is nothing as, you know, there was no underlying hearing. Under those circumstances, we'd ask the court to vacate the judgment and send it back to the district court with instructions to dismiss the petition as moot. Thank you. I'd like to reserve the remainder of my time. Thank you. Good morning, Judge Quinn, Judge Kleinfeld, Judge Carr. My name is Stephen Yagman. Their case is moot because they can't get any relief. My case isn't moot because I got the relief. Well, let me say I disagree with that. If I understand your contention, it is that no final order issued because the government, instead of responding on the merits to the petition, filed a motion to dismiss. Do I miss something there? I don't understand the question. The question is, if I understand your contention, at least in part, it is that the government ignored the judge's order to file a response to your petition on the merits, instead it filed a motion to dismiss. Correct. And as I understand it, that's at the core. There may be other aspects to your contention, but my question to you is, wasn't that simply a matter of discretion for the district judge? I mean, if the district judge felt that somehow the government had ignored its order, it could have said, oh, no, you don't. I've told you to respond on the merits. I mean, it seems to me that that's well within the zone of the district judge's discretion to decide whether or not the government had responded appropriately or not. That doesn't go to the issue of mootness. That goes to one of my contentions on my cross-appeal, that there was no jurisdiction over the answer that was made eventually on October 7, 2010, to the petition. It's got nothing to do with mootness as far as I'm concerned, and I don't see how it could. Mr. Yagman, let me ask you something about mootness. As you probably already gathered, that really concerns me in this case. Once I know that the second decision of the Bureau of Prisons is not challenged, and I know that the second Bureau of Prisons decision that's unchallenged sentenced you to custody for the remainder of your sentence, and that the first proceeding was expunged and cannot affect terms of confinement, how can it not be moot? It seems like there would be no relief that the district court or this court could grant that would affect anything. I think that's a red herring. The district court had already granted the relief in the report and recommendation. No, a report and recommendation doesn't do anything. Magistrates recommend to the district court, and the district court decides. What it did was it had the effect in the real world as opposed to... Oh, I know you're right about that. In the real world, the R&R is often it. It had the effect of causing my release. The second hearing isn't a part of the record. And there couldn't have been any appeal from that. It's just not. And there couldn't have been any appeal from the second hearing. Wait a minute. When the district court issued the final judgment in this case, what relief could have benefited you that the district court could have granted? The relief had already been granted because the result of the report and recommendation was the release. And the benefit that I got from that was that as a result of the first hearing that was overturned because of due process violations, my term of imprisonment had been increased from November 8, 2010, to about December 11. And that was the relief I got. I didn't have to serve an extra month in prison, in close confinement. I had never been in a prison. I was in a camp in North Carolina that had a stream running through it in the woods. That was the first time I'd actually been in a real prison, and it's significantly different. Of course. Of course you're correct on that. However, I want to know what the district court could do to change that when it decided the case. Because the Bureau of Prisons already had changed it. Well, they changed it. I got the relief of it being changed. They didn't get up, somebody didn't get up one morning and say, oh, let's hold a rehearing. What the district court did caused, both legally and as a sine qua non cause, my release on November 8. I got my relief. When someone has gotten their relief, that doesn't constitute mootness. I don't know what you call it, but I had gotten it. Well, you had not gotten relief by a district court order. You had gotten relief as a practical matter because somebody at the Bureau of Prisons or U.S. Attorney's Office or someplace read the magistrate's report and recommendation and said, we're going to lose. And they tried to fix it. They tried to paper over what had happened by holding a second hearing from which I couldn't, as a matter of law, appeal. But that's separate from the jurisdictional question. Now, it may be that during the course of litigation, certain matters got briefed, and it may be that it caused the BOP to self-correct its error. But I think the question that we're wrestling with is on the date that the district court ruled, which wasn't until September 27 of 2012, whether there was still a case or controversy at that time. I don't believe there was a case or controversy at that moment. I believe that the government took voluntary action so that there wouldn't be. And as I believe I've set forth in my brief, but I don't know the name of the case off the top of my head. Can't a defendant moot out a case by taking voluntary action? I mean, suppose you challenge. Let's make it simpler. Suppose somebody files a habeas and says, I shouldn't be confined. And after reading the brief, whatever jail or prison authority or whoever it is is confining them says, they're right, they're going to win this case, and they let them out. Doesn't that moot out the habeas? It does in that circumstance where there hasn't been intervening judicial action. Once there's judicial action that results in the relief being granted, there isn't mootness. I'm not aware of any case that stands for that proposition. I think the defendant's voluntary cessation of wrongful behavior can moot a case unless the behavior is somehow reasonably expected to reoccur and then the court then still has jurisdiction to rule on it. Are you making that sort of argument that the conduct somehow can reasonably be expected to reoccur and that's why it doesn't moot out your case?  But it can occur as to you. In other words, I don't think you have any standing. Let's assume it could. Let's assume that day after day after day, ever since they tidied up the mess they made the first time with you, they've continued to do the same thing with countless other inmates. You might have had standing in a civil rights action or a class action, but there's certainly, I mean, a class action habeas seems to me to be a non sequitur. Well, there is a civil rights action. Sure, but that's not what's in front of us. What's in front of us is a single person claiming, seeking and getting relief via a process from which no appeal was taken. There was no adverse consequence ultimately inflicted upon you except the time that you spent in the detention center. But again, I think that's a matter for civil rights contention. It's a condition of confinement, not the fact of confinement. But let me ask this. I asked the government. I have never heard the term declaratory habeas relief or declaratory judgment. I can't remember the exact term. I mean, it just seems to me that it's unknown to me, and I don't believe it's known in our jurisprudence, so I think that the order itself is defective on its face for that reason if no other. There's no such thing as declaratory habeas relief, or is there? I didn't say there was. Well, that's what the judge called it. I think it's in the nature of what is called declaratory relief, but not in the sense of bringing a declaratory relief action. I've never made that contention. So you didn't claim that. It's just a characterization the judge gave the practical effect. Let me ask you something else. It's not a legal one. I think I just understood something I hadn't before, and tell me if I've got it right. You're saying what really got me out was the magistrate's report and recommendation, and it wasn't moot when the magistrate made his report and recommendation. The Bureau of Prisons had not corrected its error, so the case is not moot. I was looking at it in terms of the magistrate's report and recommendation being merely a report and recommendation and not a decision. So I think you're looking at it that as the magistrate's report and recommendation having the practical effect of a decision, so it should be treated like a decision. Have I got this right? That's exactly what my argument is. And what's your basis? Cite a case for that where that's so? Under Section 636, Title 28, that magistrate's decision is, in effect, advisory. It's a report and recommendation to the court for the court to consider de novo and do what it wants with it. It's not a final judgment. It's not appealable from there. I understand all that. Notwithstanding that, I believe that it had the effect, and Judge Kleinfeld has properly characterized my argument. With respect to, I've got five seconds left, voluntary cessation, I'll submit a Rule 28J letter setting forth what the case is that stands for the proposition that voluntary cessation prevents mootness. Thank you. All right. Thank you very much, Mr. Yakman. Let's put a minute on the clock. Thank you. The only thing I think that I need to respond with at this point is that the only, what is being challenged here is the September 27, 2012 judgment. By that time, there was no relief that was going to be available to Mr. Yakman. I thought a magistrate's report and recommendation was merely a recommendation and not an action by the court. Mr. Yakman points out correctly that, as a practical matter, it's often treated as though it were a decision by the court because they're generally accepted and it had the effect of a decision in this case. I don't remember any authority for what I had always thought. I just, I don't know why I thought it. Is it clear? It is clear. And that issue was actually briefed in our third brief on cross-appeal with respect to that issue. A report and recommendation is not a final determination. It is subject to objections and it is subject to a final review by the district court. And I can, as a former magistrate, I can assure you it wasn't always treated as a final decision by the judges for whom I, to whom I submitted my reports and recommendations. But thank you, counsel. Thank you, Your Honor. Thank you very much, both sides, for your arguments. The matter is submitted for decision by the court.
judges: Carr, Kleinfeld, Nguyen